UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALLAN TEASEL,

                Plaintiff,                Case No. 17-cv-10987

v.                                            Honorable Thomas L. Ludington

ROSE LASKOWSKI,

                Defendant.

_____/

**ORDER GRANTING IN PART MOTIONS TO ENFORCE SUBPOENA, DENYING WITHOUT PREJUDICE MOTION TO QUASH SUBPOENA, DIRECTING PRODUCTION OF DOCUMENTS, SETTING DEADLINE FOR OBJECTIONS, SCHEDULING STATUS CONFERENCE, AND DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY INJUNCTION**

On March 28, 2017, Plaintiff Allan Teasel, a patient at a mental health institution initiated this case on his behalf and on behalf of other similarly situated patients. His complaint alleges that the State of Michigan and the Department of Health and Human Services have violated his substantive due process rights by forcing his caregivers to work excessive overtime. Compl., ECF No. 1. On July 17, 2017, Teasel filed an amended complaint which names Rose Laskowski, the director of the mental health institution housing Teasel, as the only Defendant. Am. Compl., ECF No. 30. Several days after filing the amended complaint, Teasel filed a motion for a preliminary injunction. ECF No. 32. On August 25, 2017, Lawskowski filed a motion to dismiss the suit for lack of standing. ECF No. 43. A hearing on the two motions was held on November 7, 2017. On December 15, 2017, the Court issued an opinion and order denying the motion to dismiss and directing attention to certain issues at the next hearing on the motion for a preliminary injunction. ECF No. 60.

On January 3, 2018, Teasel filed two apparently identical emergency motions to enforce a subpoena. ECF Nos. 62, 63. The subpoena at issue was broadly focused on information relevant to the issues the Court had identified in its December 15, 2017, opinion and order. On January 19, 2018, Teasel filed a motion to quash a subpoena issued by Defendant. ECF No. 67. In that subpoena, Defendant seeks documents retained by Ms. Judd and Ms. Goyette, two individuals who provided affidavits to Teasel which support allegations made in the complaint.

On January 22, 2018, the Court held a second hearing on the motion for a preliminary injunction. Discussion on the record quickly centered on the ongoing discovery disputes, and Teasel acknowledged that additional disclosures were required before he could complete his proofs regarding the requested preliminary injunction. After a short recess, the parties and Court conducted an informal status conference to address the pending discovery motions. This order is meant to formalize the understandings reached in that status conference.

## I.

The Court summarized Teasel's factual allegations in the December 15, 2017, opinion and order. That summary will be adopted in full.

## II.

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Teasel seeks a court order authorizing early discovery. In reviewing such requests, courts typically impose a "good cause standard." 8A Charles Alan Wright and Arthur R. Miller, *1993 Discovery Moratorium Pending Discovery Plan*, Fed. Prac. & Proc. Juris. § 2046.1 (4d ed.). Several decisions within the Sixth Circuit provide some guidance. In *In re Paradise Valley Holdings, Inc.*, the bankruptcy court explained that "'[g]ood

cause may be found where the plaintiff's need for expedited discovery outweighs the possible prejudice or hardship to the defendant.'" No. 03-34704, 2005 WL 3841866, at *2 (Bankr. E.D. Tenn. Dec. 29, 2005) (quoting *Metal Bldg. Components, LP v. Caperton*, 2004 U.S. Dist. LEXIS 28854, at *10 (D.N.M. Apr. 2, 2004)). Further, "[g]ood cause is usually found in cases involving requests for injunctive relief, challenges to personal jurisdiction, class actions, and claims of infringement and unfair competition." *Id.* The *Paradise Valley Holdings* opinion also emphasizes that Rule 26(d) "'protects defendants from unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel. This important protection maintains the fairness of civil litigation.'" *Id.* (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y.1982)). *See also USEC Inc. v. Everitt*, No. 3:09-CV-4, 2009 WL 152479, at *3 (E.D. Tenn. Jan. 22, 2009) (adopting the analysis in *Paradise Valley Holdings*); *Whitfield v. Hochsheid*, No. C-1-02-218, 2002 WL 1560267, at *1 (S.D. Ohio July 2, 2002) (imposing a good cause standard).

Other district courts have also identified certain relevant factors. In *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, the district court specified four factors:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

202 F.R.D. 612, 613 (D. Ariz. 2001) (quoting *Notaro* and noting that *Notaro* borrowed the test for granting a preliminary injunction and applied it to a request for expedited discovery). Similarly, in *Meritain Health Inc. v. Express Scripts, Inc.*, the district court enumerated a different five factors that have relevance:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

No. 4:12-CV-266 CEJ, 2012 WL 1320147, at *2 (E.D. Mo. Apr. 17, 2012) (citing *Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D.Colo. 2003)).

### III.

#### A.

Although a Rule 26(f) conference has not yet been held, the Court believes that there is good cause to authorize limited document discovery. Teasel has filed a motion for a preliminary injunction and, as reflected in the Court's December 15, 2017, opinion and order, there are several outstanding factual uncertainties that bear considerable relevance to that motion. Relatedly, because Defendant's motion to dismiss has been denied, Teasel's requests for discovery are premature more in form than in substance. Teasel's motion to enforce his subpoena will be granted in part.

#### B.

##### 1.

In Teasel's subpoena to Defendant, he requests a significant universe of documents over a lengthy period of time. Teasel's first four requests seek documentation of "incidences of murder, suicide, assault, and sexual assault," "violence," and communicable diseases at the Caro Center over the past ten years. Pl. Subpoena at 7–8, ECF No. 62, Ex. A. At the conference, Defendant represented that much of this information has already been provided. The parties agreed to limit the relevant time period to six years. Defendant also agreed to conduct a key-word search of its records for "assault" and supply the results to Teasel.

##### 2.

The fifth request from Teasel's subpoena is the primary source of contention between the parties. In that request, Teasel requests "all documents . . . related to voluntary and mandatory

overtime hours worked by each Resident Care Aid [RCAs] employed by Caro Center between December 1, 2007 and present." *Id.* at 8. At the conference, Defendant explained that there are two categories of overtime records. Aggregate overtime records for employees are currently maintained electronically and thus can be created and produced without conducting a particularized review of individual employee timesheets. However, those aggregate records do not specify how much overtime a specific employee worked, nor do they reflect the relationship of mandatory overtime to voluntary overtime. The second category of overtime records—employee-specific overtime records—can be created only by reviewing the biweekly timesheets submitted by employees. Because, until recently, all those records were exclusively maintained only on paper, tabulating the overtime worked by specific employees is a daunting task. As agreed at the conference, Defendant will produce aggregate overtime records for all three shifts going back two years. Defendant will also produce employee-specific overtime records for all third shifts RCAs going back two years. Defendant advised that some of the records will contain medical information (often, the reasons why overtime was necessary in a particular instance), and Teasel did not object to limited redactions of that information.

At the conference, Teasel requested overtime records going back six years. He alleges that he has been informed that, approximately three or four years ago, overtime practices at the Caro Center changed. Teasel contends that, if the amount of mandatory overtime over the past six years is plotted against the incidences of violence and disease at the Caro Center, a correlation between increased mandatory overtime and increased violence and disease will emerge. Given the significant expense which producing six years of employee-specific overtime records would impose on Defendant, overtime record production will be limited to the two year timeframe identified above. However, as discussed at the conference, if the data collected for those two years

suggests a correlation between the amount of mandatory overtime and the violence and disease at the Caro Center, additional production may be directed.

Defendant also argued that, to the extent more comprehensive overtime records are necessary, Teasel should bear the costs of their production. In connection with that assertion, Defendant offered to provide an estimate of the costs of producing additional overtime records to Teasel (and the Court).

**3.**

The sixth request in Teasel's subpoena is for "all documents . . . related to RCAs falling asleep while working. Defendant has already provided two years of records related to this request. At the conference, Defendant committed to review and disclose an additional two years of records, though Defendant cautioned that some of the relevant documents may not have been retained.

**4.**

Next, Teasel's subpoena requests "all documents . . . related to communications which involved Rose Laskowski and mandatory overtime." At the conference, Teasel further defined the term "communications." As articulated by Teasel, he seeks 1) all communications where Laskowski received or shared statistical data regarding overtime at the Caro Center, 2) all administrative steps Laskowski has taken to end mandatory overtime at the Caro Center, 3) all communications Laskowski received or sent which discussed harm to patients or staff in connection with mandatory overtime, and 4) and all of Laskowski's communications regarding the hiring of new staff, especially as the personnel need related to mandatory overtime.

As agreed at the conference, the relevant time frame for this request shall begin four years ago and end June 30, 2017. Defendant shall not be required to disclose any communications between Defendant's counsel and Laskowski which post-date the filing of the complaint (March

25, 2017). At the conference, Defendant further offered to conduct a search of Laskowski's email inbox (though not necessarily the email archives), if Teasel provided search terms.

**C.**

Although the discussion at the conference focused primarily on Teasel's subpoena, the parties did briefly discuss Defendant's subpoena to Ms. Judd and Ms. Goyette. Just before the hearing on January 22, 2018, the Court filed a stipulated protective order. ECF No. 68. At the subsequent conference, Teasel offered to submit the requested documents subject to the protective order and with the understanding that he may later assert attorney-client privilege regarding those documents. Laskowski has not responded to Teasel's motion to quash the subpoena and Defendant's subpoena was only briefly addressed at the conference. Accordingly, the Court will not affirmatively order Teasel to disclose the documents in question. Rather, the motion to quash will be denied without prejudice and, if necessary, the Court will adjudicate any disputes between the parties regarding the subpoena if any arise in the future.

**D.**

The remaining issue involves the timing of disclosures. The emailed cost estimates for production of additional overtime records shall be due on January 30, 2018.[1] Defendant will be directed to produce the documents identified above on or before March 23, 2018. Either party may file objections to the scope of disclosure and/or requests for additional disclosures, but must do so by April 2, 2018. Finally, a status conference will be scheduled for April 17, 2018, at 2:00 p.m.

The final issue which requires attention is Teasel's pending motion for a preliminary injunction. In the motion for a preliminary injunction, Teasel asserts that "should the Court determine that there is insufficient evidence at this time to grant an injunction, Plaintiffs seek

---

[1] The Court's copy should be submitted via the "Utilities, Proposed Order" function of CM/ECF.

discovery for a period of at least 45 days so to establish in more detail a record of resident injuries and overtime hours worked at each facility before a hearing on the request for preliminary injunction." ECF No. 32 at 20. At the hearing on January 22, 2018, Teasel acknowledged that, until he receives disclosures responsive to his subpoena, he would be unable to complete his proofs regarding the motion for a preliminary injunction. Given the breadth of the disclosures which will be provided over the next sixty days, Teasel's motion for a preliminary injunction will almost certainly need to be substantially updated. For that reason (and to avoid piecemeal briefing), the current motion for a preliminary injunction will be denied without prejudice. After receiving the discovery identified above, the parties will be better equipped to address the request for injunctive relief.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Teasel's motions to enforce his subpoena, ECF Nos. 62, 63, are **GRANTED in part.**

It is further **ORDERED** that Defendant Laskowski is **DIRECTED** to disclose documents as defined and identified in this order **on or before March 23, 2018.**

It is further **ORDERED** that Plaintiff Teasel's motion to quash Defendant's subpoena, ECF No. 67, is **DENIED without prejudice.**

It is further **ORDERED** that either party may object to the scope of discovery and/or seek additional discovery, but must do so **on or before April 2, 2018.**

It is further **ORDERED** that the parties are **DIRECTED** to appear at a status conference on **April 17, 2018, at 2:00 p.m.**

It is further **ORDERED** that Plaintiff Teasel's motion for a preliminary injunction, ECF No. 32, is **DENIED without prejudice.**

Dated: January 23, 2018  s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 23, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager